UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES N. DESLONDE | * | CIVIL ACTION |
| versus | * | NO. 07-4314 |
| ALLSTATE INSURANCE COMPANY | * | SECTION "F" |

ORDER AND REASONS

Before the Court are Allstate's two motions for partial summary judgment. For the reasons that follow, both motions are DENIED without prejudice.

Background

This is an insurance dispute arising out of Hurricane Katrina-damaged property.

The storm damaged the plaintiff's main residence and guest house in Slidell. The two properties, though adjacent to each other, suffered different types and degrees of damage. The plaintiff had flood insurance on both properties, as well as two insurance policies through Allstate: a homeowners policy, which provided coverage for the main residence, and a landlords policy, which provided coverage for the guest house.

The guest house was moved off its foundation and ended up in a nearby channel. (The plaintiff filed for, and received $114,000, the limits of his federal flood insurance policy for the flood

1

damage to the guest house.[1])  The main residence, part of which is raised, suffered less damage than the guest house.  The bottom level of the residence and the flooring of the main living area were damaged by the flood waters.  The plaintiff made a claim under his flood policy for this damage and received $34,628.07.

Sometime after the storm (August 29, 2005), the plaintiff submitted claims to Allstate for both properties.  He submitted a claim under his landlords policy, claiming that the guest house was damaged by wind as well as water.  He also made a claim under his homeowners policy.[2]

On September 9, 2005, Allstate made a $1,000 advance to plaintiff under his homeowners policy, and on October 3, 2005, Allstate paid $1,500 for plaintiff's additional living expenses. On November 12, 2005, an Allstate adjuster inspected the two properties.  Based on this initial inspection, on December 20, 2005, Allstate paid $11,633.73 for wind damage to the main residence, wind damage to the boat house roof, and wind damage to

---

[1] In connection with the plaintiff's flood insurance claim, a Marshall Swift valuation was performed to determine the value of plaintiff's property.  The valuation determined that the actual cash value of the guest house before the storm was $141,192. On October 25, 2005 and November 14, 2005, the plaintiff stated on his U.S. Small Business Administration home loan application and personal financial statement that the guest house was worth $160,000.

[2] He has received the following payments from Allstate, totaling $16,565.14:  $11,039.91 for damage to the dwelling, $3,561.98 for damage to other structures (the boathouse), $463.25 for damage to contents, and $1,500 in additional living expenses.

the main residence's contents.

On January 23, 2006, the plaintiff faxed Allstate a request for mold remediation payments. On February 15, 2006, an adjuster again inspected the property and reviewed the plaintiff's mold remediation report. Allstate ultimately denied the plaintiff's request for mold remediation.

On May 9, 2005, Allstate paid plaintiff $11,730.67 under his landlords policy for the wind damage to the roof of the guest house.

On August 1, 2006, the plaintiff made a supplemental claim under his homeowners policy. After another inspection, Allstate tendered $2,431.41 to compensate the plaintiff for the increased cost of replacing the roof of the boathouse.

Based on the plaintiff's persistent assertions that additional damage was caused by wind, Allstate retained an engineer to review the damage suffered by the main residence and the guest house. That engineer, Haag Engineering Co., generated reports on November 28, 2006 and August 8, 2007.

On August 24, 2007, the plaintiff sued Allstate, claiming that the plaintiff has been underpaid on his policies for wind damage to the main residence and guest house. In addition to a breach of contract claim, the plaintiff asserts claims under La.R.S. 22:658 and La.R.S. 22:1220 for Allstate's alleged arbitrary and capricious failure to timely pay his claim after it received satisfactory

proof of loss.  He seeks penalties, damages, and attorney's fees.

Allstate now moves for partial summary judgment on the plaintiff's bad faith claims, and to limit the plaintiff's recovery based on payments already received.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving

4

party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A.  Bad Faith Claims

Allstate first seeks partial summary judgment on the plaintiff's claims that Allstate acted in bad faith in refusing to pay for covered damages to his insured properties within 30 or 60 days of receipt of satisfactory proof of loss.

Under Louisiana law, insurers must suffer penalties for a bad faith failure to timely pay a claim.  Louisiana Revised Statute 22:658 requires an insurer to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss...."  Failure to do so subjects the insurer to a penalty "**when** such failure is found to be arbitrary, capricious, or without probable cause."[3]  Id. (emphasis added).  Similarly,[4] Louisiana

---

[3] The penalty an insurer is subjected to under Section 658 is as follows: "a penalty, in addition to the amount of loss, of twenty-five percent damages on the amount found to be due from

Revised Statute 22:1220 imposes "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or claimant."  An insurer breaches

---

the insurer, or one thousand dollars, whichever is greater...or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due."  Id.  Although the Louisiana legislature adopted an amendment that increased the penalty recoverable from twenty-five percent to fifty percent of the amount owed and reinstated a provision for reasonable attorney's fees and costs, these changes went into effect on August 15, 2006 and are not applied retroactively.  See, e.g., Ferguson v. State Farm Ins. Co., No. 06-3936, 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (citing Lewis v. State Farm Ins. Co., 946 So.2d 708, 728-29 (La.Ct.App. 2006)); Weiss v. Allstate Ins. Co., No. 06-3774, 2007 WL 1017341, at *3 (E.D. La. Mar. 28, 2007) (Vance, J.).

[4] The Louisiana Supreme Court has expressly acknowledged the similarity of these two penalty provisions:

> We have previously recognized the close relationship between the conduct prohibited in La.R.S. 22:658, subd. A(1) and the conduct prohibited in La.R.S. 22:1220, subd. B(5). Theriot v. Midland Risk Ins. Co., 95-2895 (La. 5/20/97), 694 So.2d 184, 192, n. 14.  In fact, the conduct prohibited is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious or without probable cause.  The primary difference is that under La. R.S. 22: 658, subd. A(1), the insurer must pay the claim within 30 days...rather than the longer 60-day period allowed under La.R.S. 1220, subd. B(5).

Calogero v. Safeway Ins. Co. Of Louisiana, 753 So.2d 170, 174 (La. 2000).

this duty, and therefore may face penalties,[5] when it knowingly "[f]ail[s] to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." La.R.S. § 1220(B)(5).

One who seeks penalties for an insurer's breach of good faith has the burden of proving that the insurer received a satisfactory proof of loss and that the insurer's actions were arbitrary, capricious, or without probable cause. See Chevalier Reliance v. Insurance Co. Of Illinois, 953 F.2d 877, 883 (5th Cir. 1992) (citations omitted); see also Lewis v. State Farm Ins. Co., 946 So.2d 708, 725 (La.App. 2 Cir. 2006)(noting that "the insured must prove that the insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse"). The Louisiana Supreme Court teaches that "'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious.'" See Louisiana Maintenance Services, Inc. V. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La. 1993).

---

[5] With respect to penalties, Section 1220(C) provides:

> In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

Put another way, "an insurer's actions [are] 'arbitrary and capricious' when its willful refusal of a claim is not based on a good faith defense." Calogero v. Safeway Ins. Co. Of Louisiana, 753 So.2d 170, 173 (La. 2000) (citing Louisiana Maintenance Services, Inc., 616 So.2d at 1253).

Given the penal nature of the statutes, they are to be strictly construed and not invoked when the insurer has a reasonable basis for denying coverage. See Hanover Corp. Of Am. V. State Farm Mut. Auto. Ins. Co., 67 F.3d 70, 73 (5th Cir. 1995). Accordingly, "the threshold issue is whether the insurer acted reasonably in failing to timely pay the claim once the insurer had adequate knowledge of the loss." Id. This determination depends on the facts known to the insurer at the time of its refusal to pay the claim. Genusa v. Robert, 720 So.2d 166, 173 (La.App. 5 Cir. 1998).

At this stage, the record is inadequate; it provides no insight into what Allstate knew when it refused to pay the plaintiff's claim. In fact, the record reveals very little regarding the reasonableness (or unreasonableness) of Allstate's initial refusal to pay anything to plaintiff under his landlords policy. (While Allstate provides no record evidence regarding the circumstances surrounding its initial refusal to pay the plaintiff anything under his landlords policy, the plaintiff helpfully points to a document, produced by Allstate, dated May 9, 2006, at which

8

time it paid $11,730.67 for wind damage to the guest house).[6] Summary judgment is inappropriate at this time.

B.  The Limits of Recovery

As this Court has previously noted, nothing bars Mr. Deslonde from collecting under his homeowners (or landlords) policy for wind damage and from collecting under his flood policies for flood damage if he can segregate and prove the two types of damages. See Wellmeyer v. Allstate Ins. Co., No. 06-1585, 2007 WL 1235042, at *2 (E.D. La. April 26, 2007).

As this and other Sections of this Court have acknowledged, this general principle, of course, is subject to a limitation: A plaintiff whose property sustains damage from both flood and wind may clearly recover for his segregable wind and flood damages, *except* to the extent that he seeks to recover twice for the same loss. See id.; see also Weiss v. Allstate Ins. Co., No. 06-3774, 2007 WL 891869, at *1 (E.D. La. Mar. 21, 2007) (Vance, J.); Broussard v. State Farm Fire and Casualty Co., No. 06-8084, 2007 WL 2264535, at *2-3 (E.D. La. Aug. 2, 2007) (Vance, J.) . This is

---

[6] By way of argument, Allstate simply suggests that "[s]urely the initial adjuster had a good faith basis for denying plaintiff's claim for wind damage under his landlord's policy based on the substantial damage caused by the storm surge." The benefit of hindsight certainly legitimizes this as an argument, but summary judgment requires a record of facts supporting any such post hoc justification.  Insight (from record evidence) regarding the reasonableness of Allstate's (not its lawyer's) determination in terms of denying the claim initially is required for summary judgment analysis.  The Court can hardly examine Allstate's conduct on this record.

well-established.  See Cole v. Celotex Corp., 599 So.2d 1058, 1080 (La. 1992) ("As a general rule, the claimant may recover under all available coverages provided there is no double recovery").

Allstate seeks to limit Mr. Deslonde's recovery under his landlords policy to either: (1) $34,269.33 (which is the pre-Katrina cash value of the guest house ($160,000), as admitted by plaintiff, less payments already received for damage to the property); **or**, if the Court considers the plaintiff's contractor's estimate of the replacement value of the guest house ($178,017), (2) $52,286.33 (which is the difference between the plaintiff's estimate of the replacement value of the guest house, minus the $125,730.67 he has received under his flood insurance and landlords policies).

On this record, partial summary judgment is inappropriate. Although an insured cannot recover twice for a single loss, Allstate asserts that the plaintiff's guest house is worth $160,000, based on the plaintiff's admission in a U.S. Small Business Administration Home Loan Application that the value of his guest house is $160,000.  The plaintiff disputes this, saying that replacement value is the standard and that the cost to rebuild his guest house has been estimated at $178,017.  While Allstate disputes that the plaintiff would be entitled to the replacement value of the guest house, Allstate nonetheless requests that the Court limit the plaintiff's recovery to $52,286.33 (based on

10

replacement value) <u>if</u> the Court rejects Allstate's initial request that the plaintiff's recovery be limited to $34,369.33 (based on actual value).  Clearly there is a dispute as to the value of the guest house, and whether the actual value or the replacement cost value is the relevant starting point.[7]

Accordingly, Allstate's motions for partial summary judgment is DENIED without prejudice.[8]

New Orleans, Louisiana, February 13, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that the papers suggest that both parties may be able to agree on this point, given Allstate's request that the Court limit the plaintiff's recovery to $52,286.33 (which is what the plaintiff suggests would be the appropriate measure) if the Court accepts the plaintiff's evidence.  But, without a more developed argument with appropriate support, the Court cannot render partial summary judgment at this point.

[8] The Court notes that it did not reach the plaintiff's arguments regarding the competency of the summary judgment evidence.  For any future motions for summary judgment, <u>both</u> parties are reminded that: "[t]o be admissible [as summary judgment evidence], documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722, at 59-60 (2d ed. 1983) (footnotes omitted).  To the extent the parties have record evidence to support their positions, an affiant not only authenticates such evidence but often serves to orient the Court and provide context to documentary evidence that -- if otherwise left standing alone -- provides minimal persuasive support for parties' positions and creates an undue burden on the Court to search for a proverbial needle in the haystack of exhibits.